UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| RONALD C. HAYES,<br><br>    Petitioner,<br><br>v.<br><br>KEVIN HAMPTON,<br><br>    Respondent. | Case No. 2:19-cv-00074<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

Petitioner Ronald C. Hayes is serving a sentence of twenty-five years in a Tennessee prison after entering a "best interest" plea of guilty to second degree murder. *Hayes v. Tennessee*, No. M2016-01094-CCA-R3-ECN, 2017 WL 4315375, at *1 (Tenn. Crim. App. Sept. 27, 2017). More than five years after the entry of judgment in his criminal case, Hayes filed a petition for a writ of error *coram nobis* in state court alleging the existence of newly discovered evidence. *Id.* The post-conviction trial court denied Hayes's petition as untimely, and the Tennessee Court of Criminal Appeals (TCCA) affirmed. *Id.* at *1–3. Hayes has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that the state courts' denial of his petition for a writ of error *coram nobis* violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. Nos. 1, 1-1.) For the reasons that follow, the Magistrate Judge will recommend that the Court deny Hayes's petition.

## I. Background

### A. Factual Background

The TCCA provided the following summary of Hayes's criminal and post-conviction proceedings:

> In 2009, a Jackson County grand jury indicted the Petitioner for felony murder, second degree murder, and especially aggravated child abuse for his role in the death of his live-in girlfriend's infant child, the victim. On April 13, 2010, by agreement of the parties, the Petitioner entered a "best interest" plea of guilty to second degree murder and an agreed sentence of twenty-five years was imposed. The remaining charges were dismissed.
>
> In April 2016, the Petitioner filed a petition for a writ of error *coram nobis*, alleging newly discovered evidence in the form of an affidavit containing "substantial and credible information" that the victim's mother, Brandi Castle, had inflicted injuries on another child, M.R.C., born on May 15, 2012. The affidavit was signed by Nicole Crockett. In the affidavit, Ms. Crockett explains that, shortly after her marriage to "Pletz," she received a phone call from Ms. Castle demanding child support for M.R.C., who Ms. Castle claimed was "Pletz's" biological child. After DNA testing confirmed the allegation, the Crocketts began visiting with M.R.C. when allowed and paying child support. The affidavit details numerous alleged lies Ms. Castle told, Ms. Castle's evasive behavior, odd bruising on M.R.C., and neglect of the children the Crocketts witnessed while in Ms. Castle's home. The affidavit concludes with the following observations:
>
>> After having a chance to reflect and review the information as well as the new information and pictures from the past, my husband and I are convinced there is a pattern of a child abuse, lack of supervision, poor parental judgement [sic], and we truly have doubts of [the Petitioner]'s involvement in the case of [the victim]. With that being said, our doubts of [the Petitioner] involvement resides on facts of the past pictures before [the Petitioner] knew [Ms. Castle] showing bruising and marks on [the victim] that are extremely similar to [M.R.C.]'s marks. Sadly there are the pictures of [the victim]'s autopsy pictures that were able to be viewed and compared that measure the same size and patterns of [M.R.C.]'s bruises/marks. It truly seems as though [Ms. Castle] has slipped through another situation to where the children are the victims.

*Hayes*, 2017 WL 4315375, at *1 (alterations in original) (footnote omitted).

B.  **Procedural History**

The Criminal Court for Jackson County, Tennessee denied Hayes's petition for a writ of error *coram nobis* as untimely, finding that Tenn. Code Ann. § 27-7-103 required Hayes's petition to have been filed within one year after his criminal judgment became final and that Hayes's "eligibility for a claim for relief ha[d] long since passed." (Doc. No. 4-1, PageID# 268); *see also Hayes*, 2017 WL 4315375, at *1 ("[T]he trial court issued an order denying the petition as untimely.").

Hayes appealed, and the TCCA affirmed, explaining its reasoning as follows:

> On appeal, the Petitioner argues that the trial court erred when it dismissed his petition for a writ of error *coram nobis* because newly discovered evidence entitles him to relief. The Petitioner submits that he could not have filed his petition within the one-year statute of limitations because the evidence did not become discoverable until 2015. The State responds that the trial court correctly dismissed the Petitioner's claim as untimely, and the stated grounds for relief do not constitute "newly discovered evidence."
>
> Tennessee Code Annotated section 40-26-105 (2012) provides:
>
>> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith . . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.
>
> It is well-established that the writ of error *coram nobis* "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the *coram nobis* court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).
>
> A petition for a writ of error *coram nobis* must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103. This statute of limitations "is computed from the date the judgment of the trial court becomes final,

either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon*, 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final in May 2010. The Petitioner did not file this petition for a writ of error *coram nobis* until April 5, 2016, more than five years later.

The one-year statute of limitations for a petition for writ of error *coram nobis* may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris*, 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance a petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id.* Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

As an initial matter, the writ of error *coram nobis* is unavailable to attack the Petitioner's guilty-pleaded convictions. *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). (holding "that a guilty plea may not be collaterally attacked pursuant to the coram nobis statute"). The *Frazier* court held that the language of error [sic] *coram nobis* statute in Tennessee clearly refers to newly discovered evidence relating to matters which were litigated at trial. *Frazier* states that the plain and ordinary meaning of the term "litigated on [or at] the trial" in the context of criminal prosecutions refers to a contested proceeding involving the submission of evidence to a fact-finder who then must assess and weigh the proof in light of the applicable law and arrive at a verdict of guilt or acquittal. The *Frazier* court held that a guilty plea proceeding is a non-adversarial proceeding to which the error *coram nobis* statute is simply inapplicable.

In this case, however, we have a "best interest" or *Alford* plea. The *Frazier* court, in a footnote, addressed situations involving *Alford* pleas as follows:

> Although uncommon, criminal defendants also may plead guilty while maintaining that they did not commit the crime charged. Such pleas are often referred to as "Alford pleas" based on the United States Supreme Court case, *North Carolina v. Alford*, 400 U.S. 25 (1970). In *Alford*, our nation's high court held that a defendant who professed his innocence could nonetheless enter a constitutionally valid guilty plea when the defendant "intelligently concludes that his interests require entry of a guilty plea." *Id.* at 37. Our Rules of Criminal Procedure refer to such pleas as "nolo contendere" pleas. Tenn. R. Crim. P. 11(a)(2); *see also State v. Crowe*, 168 S.W.3d 731, 743 (Tenn. 2005). While we recognize that a criminal defendant who enters an *Alford* plea may have a stronger public policy argument than other criminal defendants for the right to seek error *coram nobis* relief, the issue remains one of a policy judgment which is within the province of the legislature, not this Court.

*Frazier*, 495 S.W.3d at 250, n. 1. In our view, although the *Frazier* case does not involve an *Alford* plea, based on the last sentence in the *Frazier* footnote, our Supreme Court would apply the same reasoning it employed in *Frazier* to hold that a writ of error *coram nobis* is not available to a petitioner who enters an *Alford* plea. An *Alford* plea proceeding is neither contested nor adversarial. It is logical that if a guilty plea hearing does not constitute a trial for the purposes of the error *coram nobis* statute, then neither does an *Alford* plea hearing.

Moreover, the affidavit submitted by the Petitioner does not constitute newly discovered evidence. The evidence of M.R.C.'s abuse is not "newly discovered," rather it is evidence that did not exist at the time the Petitioner entered his *Alford* plea. M.R.C. was not born until 2012, well after the Petitioner's 2009 indictment and 2010 guilty plea. As it relates to an allegation of Ms. Castle's poor parenting, the record indicates that the Petitioner was aware of Ms. Castle's parenting through his relationship with her. Evidence that Ms. Castle continued to fail to properly care for her subsequently born children is not "newly discovered" evidence nor is it evidence of the Petitioner's actual innocence. As such, we can not conclude that due process considerations require a tolling of the statute of limitations in this case. Therefore we agree with the trial court's conclusion that the petition in this case is untimely. Accordingly, we conclude that the trial court did not abuse its discretion in summarily denying the petition for writ of error *coram nobis*.

*Hayes*, 2017 WL 4315375, at *1–3 (alterations in original) (footnote omitted).

Hayes initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the Eastern District of Tennessee, asserting that the state

courts violated his constitutional right to due process by denying his petition for a writ of error *coram nobis* without providing him an alternative procedural mechanism to pursue his new-evidence claim. (Doc. Nos. 1, 1-1.) Respondent Warden Kevin Hampton answered Hayes's petition and filed the state-court record. (Doc. Nos. 4, 5.) Respondent argues that Hayes's claims are not cognizable in habeas corpus proceedings and that Hayes's § 2254 petition is untimely under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). (Doc. No. 5.)

The Eastern District of Tennessee transferred Hayes's petition to this Court (Doc. Nos. 8, 9), and the Court referred this action to the Magistrate Judge for a report and recommendation (Doc. No. 12). Hayes's petition is ripe for review. (Doc. No. 15.)

II.     Analysis

The only claim Hayes asserts in his § 2254 petition is that the state courts violated his constitutional right to due process by denying him access to a writ of error *coram nobis* or other post-conviction relief. (Doc. Nos. 1, 1-1.) The Supreme Court has held that states are not obligated to provide persons in their custody with collateral methods to attack their convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987). Further, Congress has instructed that federal courts may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Sixth Circuit has "held that claims challenging state collateral post-conviction proceedings 'cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254,' because '"the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."'" *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (alteration in original) (quoting *Kirby v. Dutton*,

6
Case 2:19-cv-00074   Document 16   Filed 01/27/23   Page 6 of 8 PageID #: 507

794 F.2d 245, 246 (6th Cir. 1986))); *see also id.* ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review."). The Sixth Circuit explained in *Cress* that "[a] due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Id.* (second, third, and fourth alterations in original) (quoting *Kirby*, 794 F.2d at 247). Even "'[t]hough the *ultimate* goal in' a case alleging post-conviction error 'is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement.'" *Id.* (second and third alteration in original) (quoting *Kirby*, 794 F.2d at 248). Consequently, the Sixth Circuit has held "that 'the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings'" because "'the writ is not the proper means' to challenge 'collateral matters' as opposed to 'the underlying state conviction giving rise to the prisoner's incarceration.'" *Id.* (alteration in original) (quoting *Kirby*, 794 F.2d at 247, 248).

Any alleged error that occurred during Hayes's post-conviction proceedings seeking a writ of error *coram nobis* does not implicate a constitutional violation that led to his confinement. His claims are therefore not cognizable under § 2254.[1] *See, e.g.*, *Brown v. Freeman*, No. 3:15-cv-0712, 2016 WL 8711705, at *2 (M.D. Tenn. Oct. 28, 2016) (finding petitioner's claim "that the post-conviction court erred when it failed to consider her claim for *coram nobis* relief" was "not cognizable in a federal habeas corpus action").

---

[1] Because Hayes's claims are not cognizable under § 2254, the Court need not consider Respondent's alternative argument that Hayes's § 2254 claims are untimely under AEDPA. *See Holland v. United States*, Nos. 1:13-CR-096; 1:17-CV-323, 2018 WL 3973412, at *1 (E.D. Tenn. Aug. 20, 2018) (declining to address timeliness arguments where petitioner's claims for relief were not cognizable under § 2255).

### III. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Hayes's petition for a writ of habeas corpus under § 2254 (Doc. No. 1) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of January, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge